IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL CHAVIS,

                                    Plaintiff,

              v.                              Civil Action No.
                                              9:00-CV-1418 (LEK/DEP)

GLENN S. GOORD, Commissioner of
D.O.C.S., *et al.*,

                                    Defendants.

_____

<u>APPEARANCES</u>:                        <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

MICHAEL CHAVIS, *pro se*

<u>FOR DEFENDANTS</u>:

OFFICE OF ATTORNEY GENERAL        SENTA B. SIUDA, ESQ.
State of New York                 Assistant Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


<u>REPORT AND RECOMMENDATION</u>

       Plaintiff Michael Chavis, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action pursuant to 42 U.S.C. § 1983 claiming deprivation of his constitutional rights at the hands of the defendants, including the former Commissioner of the New York State Department of Correctional Services ("DOCS") and several DOCS employees.  In his complaint, plaintiff challenges a Sunday prison work assignment alleging, *inter alia*, that it interfered with his First Amendment religious free exercise rights.  Plaintiff additionally maintains that in retaliation for having asserted his protected rights he was issued two misbehavior reports, resulting in disciplinary keeplock confinement, and that in the process the defendants lost or confiscated certain of his personal property, including an income tax refund check.

In 2003 plaintiff's complaint was dismissed by this court, on motion by the defendants seeking entry of summary judgment, based upon the finding that plaintiff had failed to exhaust his administrative remedies with respect to his first claim and invocation of a "total exhaustion" requirement under which a mixed complaint, containing a combination of exhausted and unexhausted claims, was subject to dismissal.[1]  That determination

---

[1]      At the time of that determination this court, while noting a split of authority regarding the issue, had adopted a "total exhaustion" rule.  *See Law v. Bergamini*, No. 01-CV-463 (LEK)(DEP), 2003 WL 133272, at *1 (N.D.N.Y. Jan. 14, 2003).  The Supreme Court has since clarified that total exhaustion is not required and, consequently, a court presented with a mixed complaint need only dismiss the

was later reversed by the Court of Appeals for the Second Circuit,
following the issuance by that court in 2004 of a series of decisions
addressing the issue of exhaustion, and the matter was remanded for
further consideration, specifically for a determination of whether the
plaintiff had adequately apprised prison officials of his claims during the
course of defending against disciplinary charges stemming from his
refusal to work.

Having carefully considered the record now before the court in light
of the Second Circuit's directive and intervening case law from both that
court and the United States Supreme Court, and with the benefit of
supplemental briefing by the parties, I find that each of plaintiff's three
claims remains unexhausted, and therefore recommend dismissal of
plaintiff's complaint on this procedural basis.

I.     BACKGROUND

At the times relevant to his claims the plaintiff was a New York State
prison inmate entrusted to the custody of the DOCS, and assigned to the
Oneida Correctional Facility ("Oneida"), located in Rome, New York.  *See*
*generally* Complaint (Dkt. No.1) § 6.  On the morning of September 12,

---

unexhausted claims contained within it.  *See Jones v. Bock,* __ U.S. __, 127 S. Ct.
910, 925-26 (2007); *see also Ortiz v. McBride*, 380 F.3d 649, 656 (2d Cir. 2004).

1999, a Sunday, plaintiff was ordered to work as a recreation aid at the facility. *Id.* Plaintiff refused to obey that directive, both on the basis that he was not scheduled to work on Sundays, and additionally asserting that the requirement interfered with the exercise of his chosen religion as a Baptist. *Id.*; *see also* Defendants' Exhibits (Dkt. No. 33) Exhs. A-K.

As a result of his refusal to work on that date and ensuing debate over the work assignment, Chavis was issued two misbehavior reports, both dated September 12, 1999. Defendants' Exhibits (Dkt. No. 33) Exhs. A & F. The first of those reports charged plaintiff with failure to obey a direct order (Disciplinary Rule 106.10), being out of place (Disciplinary Rule 109.10), and harassment of DOCS employees (Disciplinary Rule 107.11). *Id.* Exh. A. The second charge lodged in connection with the incident accused plaintiff of failing to obey a direct order (Disciplinary Rule 106.10), verbal harassment of DOCS employees (Disciplinary Rule 107.11), lying (Disciplinary Rule 107.20), and creating a disturbance (Disciplinary Rule 104.13). *Id.* Exh. F.

The issuance of those two disciplinary reports resulted in the convening of two separate disciplinary hearings. Defendants' Exhibits (Dkt. No. 33) Exh. A-F.  The first of those two, a Tier III hearing, was held

4

beginning on September 17, 1999 and continuing to September 23, 1999, with Corrections Captain Lane presiding as the hearing officer.[2] Defendants' Exhibits (Dkt. No. 33) Exh. H.  That hearing resulted in a finding of guilt on the charge of refusal to obey a direct order, but dismissal of the remaining three counts.  Defendants' Exhibits (Dkt. No. 33) Exh. I.  A period of forty-five days of keeplock confinement, with a corresponding loss of privileges, was imposed as a sanction for that violation.  *Id.*

A Tier II hearing was conducted on September 24, 1999 by Corrections Lieutenant Almstead to address the second misbehavior report issued on September 12, 1999.  Defendants' Exhibits (Dkt. No. 33) Exh. C.  That hearing resulted in a finding of guilt on the first two charges, but acquittal with respect to the harassment claim.  Defendants' Exhibits (Dkt. No. 33) Exh D.  A penalty of thirty days of keeplock confinement, with a corresponding loss of various privileges, was ordered as a result of that

---

[2]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

finding.  *Id*.  The two sanction periods were designated to run consecutively.  *Id.*

Plaintiff appealed his Tier II hearing determination to defendant Melvin Hollins, the Superintendent at Oneida.  Defendants' Exhibits (Dkt. No. 33) Exh. E.  In that appeal, plaintiff complained principally that requiring him to work on the day in question violated state law exempting inmates from working on Sundays and holidays unless volunteering to do so, further asserting that he was disciplined for statements made regarding prison policies.  *Id*.  Those arguments were rejected, and the hearing officer's determination was upheld by a decision rendered by the Superintendent on September 30, 1999 lacking in any analysis of plaintiff's contentions or elaboration regarding his rationale.  *Id.*

The result of plaintiff's Tier III hearing was also appealed by Chavis; consistent with the controlling provisions of the applicable DOCS regulations, that appeal was taken directly to the Commissioner. Defendants' Exhibits (Dkt. No. 33) Exh. J.  In that appeal, plaintiff argued that the order which he refused to follow violated state law and prison policies, as well as interfering with his beliefs as a Baptist.  *Id.*  That appeal resulted in the issuance on November 16, 1999 of a written determination

by defendant Donald Selsky, the DOCS Director of Special

Housing/Inmate Disciplinary Program, affirming the determination in all

respects.  Defendants' Exhibits (Dkt. No. 33) Exh. J.

As a result of the two disciplinary hearings, plaintiff remained in

disciplinary confinement between October 12, 1999 and December 26,

1999.  Defendants' Exhibits (Dkt. No. 33) Exhs. D, I.  Plaintiff maintains

that during that time his property was "ransacked", "confiscated", and in

some cases "discarded".  Complaint (Dkt. No. 1) § 7; *see also* Plaintiff's

Memorandum (Dkt. No. 37) at 3.   Among the items lost, according to the

plaintiff, was an income tax overpayment refund check drawn on Chase

Manhattan Bank.  *Id.*

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on September 18, 2000 and was

thereafter granted leave to proceed *in forma pauperis*.  Dkt. Nos. 1, 4.

Plaintiff's complaint asserts three causes of action, including 1) violation of

his religious free exercise rights as guaranteed, *inter alia*, by the First and

Fourteenth Amendments of the United States Constitution;[3] 2) unlawful

---

[3]     Plaintiff's complaint purports to assert a cause of action under the
Religious Freedom Restoration Act of 1993, formerly codified in relevant part at 42
U.S.C. § 2000bb *et seq.* ("RFRA"). Unfortunately for the plaintiff, however, subsequent
to its enactment the RFRA was stricken down as unconstitutional.  *See Ford v.
McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003).

retaliation based upon his having been disciplined for asserting

constitutionally protected rights; and 3) confiscation by defendants of his

property under color of state law. *Id*. Named in plaintiff's complaint as

defendants are former DOCS Commissioner Goord; OCF Superintendent

Hollins; DOCS Director of Special Housing/Inmate Disciplinary Program

Selsky; and Corrections Officers Dolan, Graveline, Campbell, and Wiley,

all employed by the DOCS and stationed at Oneida.

Following the joinder of issue, defendants moved on March 13, 2002

seeking entry of summary judgment dismissing plaintiff's complaint on a

variety of grounds including, *inter alia*, failure to exhaust available internal

administrative remedies. Dkt. Nos. 32-35. In response to that motion,

which was opposed by the plaintiff, *see* Dkt. Nos. 36, 37, I issued a report

and recommendation dated February 28, 2003 addressing defendants'

request. Dkt. No. 41. In that report, I found that plaintiff had failed to

---

Liberally construed, plaintiff's complaint, while not specifically asserting such a cause of action, could be interpreted as supporting a cause of action under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified in relevant part at 42 U.S.C. § 2000cc(a) and 2000cc-1(a). Because claims under the RLUIPA are similar to free exercise causes of action asserted under the First Amendment, although analyzed under a slightly different framework, *see Salhuddin v. Goord*, 467 F.3d 263, 264 (2d Cir. 2006), and in any event are subject to the requirement of exhaustion, in light of the recommended disposition, I have not separately analyzed that cause of action or considered whether it is appropriately asserted in this case.

satisfy his exhaustion obligation with regard to his first cause of action and, invoking a total exhaustion rule, recommended dismissal of all three of plaintiff's claims, thus finding it unnecessary to address the remaining arguments, most of which addressed the alleged substantive deficiencies of plaintiff's claims, as well as raising the issue of qualified immunity. *Id.* That report and recommendation was adopted by decision and order issued by District Judge Lawrence E. Kahn on March 26, 2003. Dkt. No. 43.

Plaintiff appealed the resulting judgment to the United States Court of Appeals for the Second Circuit. After initially staying plaintiff's appeal based upon the pendency of several significant cases addressing the contours of the statutory exhaustion requirement on the basis of which plaintiff's complaint was dismissed, the Second Circuit issued a decision on March 1, 2005 vacating this court's determination and remanding the matter for further consideration, with the specific instruction that the court "determine whether [plaintiff's] allegations against the [defendants] in his disciplinary proceedings sufficed to put the [defendants] on notice and provide them time and opportunity to address the complaint internally, thereby rendering his claims exhausted." Second Circuit Mandate Dkt.

No. 49 (citations omitted).

By decision and order subsequently issued by District Judge Kahn on June 20, 2006, the matter was returned to me for further consideration, following supplemental briefing by the parties.  Dkt. No. 50.  With the filing of supplemental memoranda on behalf of the defendants on February 16, 2007, Dkt. No. 58, and by the plaintiff filed on March 9, 2007, Dkt. No. 59, the matter is ripe for determination and is once again before me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed.R.Civ.P 72(b).

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986);

*Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d

77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if

"it might affect the outcome of the suit under the governing law."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of*

*New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material

fact is genuinely in dispute "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions, they must

establish more than mere "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106

S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d

615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether

*pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact to

be decided with respect to any essential element of the claim in issue; the

failure to meet this burden warrants denial of the motion.  *Anderson*, 477

U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.  In

the event this initial burden is met, the opposing party must show, through

affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.

Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

inappropriate where "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of

Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also

Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is

appropriate only when "there can be but one reasonable conclusion as to

the verdict.").

B.    Failure to Exhaust Administrative Remedies

The record before the court firmly establishes, without contradiction,

the plaintiff's failure to file a formal grievance with regard to any of the

matters now asserted in his complaint.  Plaintiff maintains that his claims

nonetheless should survive the defendants' exhaustion challenge based

upon the fact that he raised issues associated with his first two causes of

action during the disciplinary proceedings at issue in the case, and his assertion that the loss of property claim is not grievable under the controlling provisions of the DOCS grievance program.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* __ U.S. __, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into

courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* __ U.S. __, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's

14

critical procedural rules." *Woodford*, 126 S. Ct. at 2388; *see also Macias v. Zenk*, __ F.3d __, 2007 WL 2127722, at *3 (2d Cir. July 26, 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 2007 WL 2127722, at *3 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.  *Macias*, 2007 WL 2127722, at *3; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times.  *Macias,* 2007 WL 2127722, at *3; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to

15

properly raise or preserve it or whether, through their own actions, by

preventing the exhaustion of plaintiff's remedies, they should be estopped

from asserting failure to exhaust as a defense.  *Macias*, 2007 WL

2127722, at *3; *Hemphill*, 380 F.3d at 686.  In the event the proffered

defense survives these first two levels of scrutiny, the court lastly must

examine whether special circumstances nonetheless exist and "have been

plausibly alleged" to justify the plaintiff's failure to comply with the

applicable administrative procedural requirements.[4]  *Macias*, 2007 WL

2127722, at *3; *Hemphill*, 380 F.3d at 686.

### 1.    Availability of Remedy

New York prison inmates are subject to an Inmate Grievance

Program ("IGP") established by the Department of Correctional Services

("DOCS"), and recognized as an "available" remedy for purposes of the

PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4

(S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir.

2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The

IGP consists of a three-step review process.  First, a written grievance is

---

[4]      These three prongs of the prescribed test, though distinct, plainly admit of
significant overlap.  See *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8
n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir.
2004).

16

submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[5]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite an inmate's entitlement under most circumstances to file and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff.  *See Hemphill*,

---

[5]      The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

380 F.3d at 687-88.  Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies."  *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable).  When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available."  *Id.* at 688 (internal quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

From a review of the record before the court, it appears that the claims now being raised by the plaintiff fall within the definition of grievable controversies under the IGP.  While making no argument as to whether his First Amendment and retaliation claims were grievable under the IGP, plaintiff asserts that his third claim, alleging unlawful confiscation of his

property, was not.  Inmate property claims are governed by a separate

DOCS Directive, # 2733, which outlines a two-step procedure for an

inmate seeking restitution for property that is lost, damaged, or destroyed

while the inmate is in the custody of the DOCS.  N.Y. Dep't Corr. Serv. Dir.

# 2733.  In accordance with that prescribed procedure, an inmate must file

an initial claim form with the Deputy Superintendent for Administration

(DSA), or equivalent officer at the facility in which the inmate is housed.

*Id.*  A claim reviewer reviews the claim and communicates a decision to

deny or approve the claim to the inmate.  *Id.*  If the claim reviewer denies

the inmate's claim, he or she may appeal the decision.  *Id.*  Where the

inmate must direct his appeal is based on the value of the property in the

claim; appeals for claims up to $500 should be directed to the facility

superintendent, while appeals for claims over $500 should be directed to

the Division of Program Services, Office of Inmate Accounts.  *Id.*

While it is apparent from the language of the New York Code of

Rules and Regulations, which codifies the IGP as described in DOCS

Directive # 4040, that the IGRC may dismiss a grievance where the

subject matter is more appropriately resolved through the property claim

procedure described in Directive # 2733, the language does not compel

the IGRC to do so.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.
There is no clear direction from any of the New York district courts or the
Second Circuit regarding whether property claims are the exclusive
province of Directive # 2733, or whether such claims may be grieved if the
three-step process articulated in Directive # 4040 is the first means of
redress.  *Anderson v. C.O. #??8593 Pinto*, No. 01 Civ. 9615 (LBS), 2002
WL 1585907, at *2 (S.D.N.Y. July 17, 2002) (finding that the plaintiff failed
to exhaust his administrative remedies in a claim involving destruction of
property because he failed to file a grievance alleging such destruction);
*Cherry v. Selsky*, No. 99 Civ. 4636, 2000 WL 943436, at *7 (S.D.N.Y. July
7, 2000) (adopting a literal, textual interpretation of what issues are non-
grievable under Directive # 4040).

Regardless of this apparent dilemma, it is not determinative of the
circumstances now before the court.  Although the plaintiff in this case
filed an appeal based on the findings at his superintendent's hearing, that
appeal involved only a defense of his actions that gave rise to the
superintendent's hearing and did not allege property damage subsequent
to the hearing.  It is therefore clear that those appeals are not sufficient to
exhaust the administrative remedies for stolen or damaged property.

20

Plaintiff has not argued that he filed a claim under Directive # 2733,
although he seems to believe that Directive # 2733 would be controlling.
Plaintiff's Supplemental Memorandum (Dkt. No. 59) at 2.  Given that
plaintiff has not exercised his rights under either Directive # 4040 or under
Directive # 2733, however, he has not exhausted *any* administrative
remedy with regard to his property claim.  Accordingly, regardless of
whether the claim is raised under the Fourth Amendment, asserting an
unlawful seizure, or the Fourteenth Amendment, alleging deprivation of
property without due process, and notwithstanding the existence of a
potential parallel claims procedure for asserting lost property claims,
plaintiff's property loss claim is grievable under the IGP. [6]

Plaintiff has asserted no basis to conclude that through their actions
the defendants improperly deterred his filing of a grievance, and the record
discloses no basis for such a finding.  Accordingly, I conclude that there
was an administrative remedy available to the plaintiff in this case at the
times relevant to his claims.

## 2.    Presentation of Defense/Estoppel

---

[6]     Fourth Amendment deprivation claims regarding unlawful seizure and
confiscation of properties are subject to the requirement of exhaustion.  *See*, *e.g.*,
*Boddie v. Bradley*, No. 99-CV-1016, 2006 WL 162996 (N.D.N.Y. Jan. 20, 2006)
(McAvoy, J.), *aff'd.,* No. 06-0899, 2007 WL595247 (2d Cir. Feb. 16, 2007)
(unpublished).

_____The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In their answer defendants have raised, and thus preserved, the affirmative defense of exhaustion of remedies. See Answer (Dkt. No. 14) ¶ 14. Because the defendants have properly raised exhaustion as a defense, and plaintiff does not assert any basis to estop them from pursuing it, I find that this prong of the exhaustion test does not come into play in this case.

### 3.   Special Circumstances

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test include where a

plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.  *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*). This element is the principal focus of plaintiff's contention that his claims are not subject to dismissal for failure to exhaust.

Plaintiff maintains that the prison officials at Oneida were adequately placed on notice of his free exercise and retaliation claims by virtue of his raising them during the course of two disciplinary hearings, and that those officials were thereby afforded an adequate opportunity to investigate and, if necessary, take remedial measures to address those alleged violations.[7]

Since the issuance of the Second Circuit's mandate in this case the Supreme Court has reenforced the PLRA exhaustion requirement and held that 42 U.S.C. § 1997e(a) requires "proper exhaustion" of administrative remedies.  *Woodford v. Ngo*, 126 S. Ct. at 2388; *see Macias*, 2007 WL127722, at *3.[8]  The Second Circuit recently has

---

[7]     Aside from arguing that it is not grievable, plaintiff has offered no facts which would potentially constitute special circumstances excusing the requirement of exhausting his properly loss claim.

[8]     The Second Circuit has yet to address the ongoing viability of its *Hemphill* three-part test in light of the Supreme Court's decision in *Woodford.  See Lawyer v. Gatto*, No. 03 Civ. 7577, 2007 WL 549440, at *4 n.4 (S.D.N.Y. Feb. 21, 2007); *Larkins*

emphasized that to be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation. *Macias,* 2007 WL 2127722, at *3.

From a review of transcripts of plaintiff's disciplinary hearings, it appears that both the religious free exercise issue and his claim of retaliation were raised by the plaintiff during the course of those proceedings. While articulation of those issues during his disciplinary proceedings may have represented substantive exhaustion, by raising them in defense of the misbehavior reports at issue plaintiff did not fulfill his obligation to procedurally exhaust available remedies with regard to those claims. The focus of a disciplinary hearing is upon the conduct of

---

*v. Selsky*, No. 04 Civ. 5900, 2006 WL 3548959, at *9 n.4 (S.D.N.Y. Dec. 6, 2006). Several courts within the circuit have acknowledged uncertainty caused by the tension between *Hemphill* and *Woodford*. *See Hargrove v. Riley*, No. CV-04-4587, 2007 WL 389003, at *8 n.13 (E.D.N.Y. Jan. 31, 2007). It is clear from the court's subsequent decision in *Macias*, however, that the Second Circuit has at least partly retreated from its established exhaustion jurisprudence, recognizing the irreconcilable tension between *Woodford* and its earlier decision in *Braham v. Clancey*, 425 F.3d 177 (2d Cir. 2005) and acknowledging that under *Woodford* mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *Macias*, 2007 WL 2127722, at *6.

the inmate, and not that of prison officials.[9]  *Hairston v. LaMarche*, No. 05 Civ. 6642, 2006 WL 2309592, at *10 (S.D.N.Y. Aug. 10, 2006).  While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement by "compl[ying] with the system's critical procedural rules."  *Woodford*, 126 S. Ct. at 2388; *Macias*, 2007 WL 2127722, at *5-6; *see also Johnson*, 380 F.3d at 697-98.  The mere utterance of his claims during the course of a disciplinary hearing does not obviate the requirement that he file a grievance setting forth a

_____

[9]     This distinction is well-illustrated by consideration of the charge accusing plaintiff of failure to obey an order.  It is well-established that an inmate's failure to obey an inappropriate or even unlawful order of a prison official can nonetheless give rise to a finding that a disciplinary violation has occurred.  *See David v. Goord*, 301 A.D.2d 1002, 1003, 753 N.Y.S.2d 409, 409 (3d Dep't 2003); *see also Thompson v. Selsky*, 289 A.D.2d 809, 809-10, 734 N.Y.S.2d 348, 349 (3d Dep't 2001).  Accordingly, the question of whether the order that plaintiff work on the day in question ran afoul of his First Amendment rights was not necessarily relevant to the issues raised in the disciplinary hearings, and the hearing officer therefore lacked any incentive to investigate the claim.  Thus, for example, toward the close of the Tier II hearing the hearing officer noted issues raised by the plaintiff under the New York Corrections Law and the Constitution, stating that they can be dealt with either in the appeal or in the further court process, adding: "We're not here to debate the law.  We're to, to handle this . . . specific misbehavior report."  Defendants' Exhibits (Dkt. No. 33) Exh. C at 22.  The fact that the lawfulness *vel non* of the order was not an issue and did not provide a defense was also confirmed by the hearing officer during plaintiff's Tier III hearing.  Defendants' Exhibits (Dkt. No. 33) Exh. H at 15.

claim which is based upon the same or closely related facts.  *Reynoso v. Swezey*, 423 F.Supp. 2d 73, 74-75 (W.D.N.Y. 2006).

In this regard the circumstances of this case are materially distinguishable from other circumstances where the raising of constitutional claims during a disciplinary hearing has resulted in thorough investigation of the matter by prison officials. *See, e.g., Hairston,* 2006 WL 2309592, at *8-11.  In this instance, there is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.

I note that this case is also readily distinguishable from circumstances where an inmate complains of procedural due process deprivations stemming from the disciplinary hearing process.  *See, e.g., Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Careful review of plaintiff's complaint, even when generously construed, fails to reveal the existence of such a due process claim; instead plaintiff's claims stem from facts which, while related, are independent of any alleged due process violation.[10]  As such,

---

[10]    Given the fact that the two disciplinary hearings resulted in periods of disciplinary confinement of thirty and forty-five days, respectively, and in light of the lack of any other allegations of conditions which would represent significant and

plaintiff's contention that he properly pursued his claims through the disciplinary process is without merit.

In sum, a careful review of the record in this matter reflects no special circumstances that would justify plaintiff's failure to exhaust administrative remedies before filing suit.  By all accounts, plaintiff has been a prison inmate for many years, and his complaint discloses that this is not his first entry into the civil rights litigation arena.  The circumstances of this case firmly reveal that the plaintiff has failed both to place prison officials on notice of his three distinct claims and to afford them the opportunity to redress his claims before being named as defendants in a federal civil rights action.  As the Supreme Court has noted "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules." *Woodford,* 126 S.Ct. at 2388.  Finding no basis to excuse the grievance requirement and reward plaintiff for his short circuiting of this important exhaustion mandate, I find that he has

---

atypical deprivations in comparison to the conditions ordinarily incident to prison life, it is doubtful that plaintiff could establish the existence of a cognizable liberty interest sufficient to trigger the Fourteenth Amendment's due process requirements. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 1999); *see also Hynes*, 143 F.3d at 658.

failed to satisfy that requirement with respect to each of his three claims and therefore recommend dismissal of his complaint.

IV.    SUMMARY AND RECOMMENDATION

While two of plaintiff's three claims depend upon facts somewhat aligned with the circumstances aired during his disciplinary hearing, the record in this case clearly demonstrates that plaintiff did not place prison officials on notice of his three claims in such a way as to allow them an adequate opportunity to investigate, and, if appropriate, remediate the matter, and thus plaintiff has not properly exhausted his claims.  Under these circumstances dismissal of plaintiff's claims, however meritorious they may prove to be, is required under the PLRA's exhaustion provision. As the Supreme Court has noted, "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."  *Woodford,* 126 S. Ct. at 2388.

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. Nos. 32-35) be GRANTED, and plaintiff's complaint be DISMISSED in all respects, without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the

parties have ten days within which to file written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.

<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL</u>

<u>PRECLUDE APPELLATE REVIEW</u>.  *Roldan v. Racette*, 984 F.2d 85, 89

(2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*,

892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

6(e), 72.

The clerk is directed to promptly forward a copy of this order to the

plaintiff by regular mail and defendant via electronic means.


Dated:      August 17, 2007
            Syracuse, New York




David E. Peebles
U.S. Magistrate Judge